Good afternoon, Your Honors. May it please the Court, my name is Diana Chamberlain and I represent the petitioner, Edith Waithira. Ms. Waithira is fighting for the chance to reopen her case with competent counsel. Here, she filed a motion to reopen with the Board of Immigration Appeals based on two separate grounds, ineffective assistance of counsel and worsening country conditions in her native Kenya. In its decision, the Board ignored evidence in the record and also failed to separately analyze all forms of relief that she was seeking. This abuse of discretion cannot go and the case must be remanded for a new decision. I'd like to start, Your Honors, with the motion to reopen based on ineffective assistance of counsel and specifically due diligence. The review of due diligence must be fact-intensive and case-specific as well as based on the foreign nationals' particular circumstances. That comes from the Abagyan case, Your Honors. Here, the timeline is as follows. Ms. Waithira received a letter about that decision in November or early December of 2017. That same month, she contacted new counsel for help. That same month, December 2017, new counsel began contacting her prior attorney requesting copies of the file. Those requests, certified mails, phone calls, emails, all went unanswered. During that same time period, new counsel submitted a request for FOIA for a copy of her file and also assisted Ms. Waithira in obtaining briefing from this court. New counsel received that complete file, the FOIA response, and the briefing from this court in late July of 2018. She reviewed 400 pages of records, communicated with her client, reviewed the same with her client, and indicated that it looked like there was ineffective assistance. You have this long chronology which you lay out, but it starts long before that, and that, to me, we're looking at the BIA decision. So she has a situation where counsel is suspended from the practice of law. At that point, she's already lost twice, unfortunately, and her appeal is pending before the Ninth Circuit Court of Appeals, and they're saying, you know, now you have this long hiatus where you don't do anything. And the only thing that happens in there is she loses again. So why doesn't substantial evidence support the BIA's determination that she wasn't diligent, starting when she knew that she had basically a suspended lawyer, which you don't usually often get the benefit of that, often, as you know, in filing these ineffective assistance of counsel. You might file a bar but you don't have a final decision like they did on this gentleman. So if you start backwards, why did the BIA err? Thank you, Your Honor. Again, we must review this particular case and her due diligence based on her personal circumstances. The Ninth Circuit has found that your diligence, if you pursue forms of relief and appeals, she trusted Mr. Conte. He said you might get lucky at the Ninth Circuit. So it was reasonable that she pursued that first petition for review. So, I mean, that doesn't really answer the question. She has a suspended lawyer. Now, whether she's naive about what that means, that's really not clear from the record, and that doesn't seem to figure in. So she has a suspended lawyer, and she doesn't need to wait to lose again to realize she has a problem. And Your Honor, in her declaration, she indicates that when she received the letter from the Ninth Circuit advising her of the suspension, that she began trying to communicate with Mr. Conte to get a copy of her file, and those requests as well went unanswered. You know, she's in a new legal system. She doesn't understand our disciplinary of attorneys system as well in the vulnerable position of being in removal proceedings. And based on those particular circumstances, I don't think that would count as vital information to tell her that she needed to be on notice, that something might have gone wrong in her own case. An attorney could be suspended for numerous reasons, and it doesn't indicate to an individual in her personal circumstances, her particular circumstances, that something might have gone wrong in her own case. It's only when she met with new counsel, new counsel received the FOIA response, reviewed the same, and discussed with her what that level of ineffective assistance was, that she had that vital information, and that she definitively learned about the ineffective assistance. So when did she sit down and talk with the petitioner? When did the new counsel sit down? Apparently, she obtained the files in July of 2018. What date did she sit down and talk to Mrs... I think it's... Ms. Lytheria. Yeah, Lytheria. Your Honor, that specific date is not listed in the record, so I unfortunately do not know. But what is listed in the record is Edith's declaration that says that her attorney received the FOIA response in late July. It's over 400 pages long, and assuming a counsel has, you know, more than one case, it would take a little bit of time to review that. I think with the evidence in the record, it can be just, I guess, assumed but a strong assumption that that would have taken place by, you know, early August. That's the latest. Again, the board in its decision said that there was no date provided in the motion to reopen, no evidence indicating this timeline, but the board is wrong. That evidence is at page 149 and 150, which is Edith's declaration, as well as 152, which is the letter to former counsel has to comply with Lazada that indicates that new attorney began obtaining attempts to obtain copies of the file the same month that she was retained by Ms. Lytheria, which was December of 2017. So it took December of 2017 until late July of 2018 to get that full file. Well, I don't think the board said no dates were provided. If you look at 03 of the, which is page 2 of the board's decision, the board is talking about, she's not describing in detail, she talks about several months, etc. So they're not saying no details were provided, but they just said that the general assertions about the timing are insufficient to establish that she exercised due diligence. And I would argue, Your Honor, that they were not general assertions about the timing. The specific dates were listed in her declaration, and her declaration is testimony. This court has also held that, unless inherently untrue, that assertions made in declarations with respect to a motion to reopen must be taken as true. So that evidence was there in the record for the BIA to review and read, had it wanted to. Not had it wanted to, it read it, but it went back to February 23, where nothing happened after that notice, and it wasn't until some months after the Ninth Circuit decision that anything happened. So I don't think there's anything in the record that suggests they didn't read everything. Did you have anything you can point to that suggests that? Yes, Your Honor. Again, I would just point out that they did not appear to understand, you know, the dates that were taking place between December of 2017 and July of 2018. They chose an arbitrary date, you know, yeah, her attorney had been suspended. Again, in her particular circumstances, that would not have counted as definitively knowing that she had ineffective assistance in her particular case, choosing that month, and then I guess it was 17 months altogether. That is not reasonable in her particular circumstances and in the fact-specific and fact-intensive and case-specific review of her due diligence. I don't think September of, excuse me, February of 2017 is the correct date to start that due diligence analysis due to her particular circumstances. Your Honor, two minutes, do you want to reserve? Thank you. Yes, sir, I will. Thank you so much, Your Honor. We'll hear from the government. Good afternoon. May it please the Court, Yanal Yusuf for the Attorney General. The Court should deny the petition for review because the Board acted within its discretion in denying Petitioner's untimely motion to reopen. The motion to reopen as to the ineffective assistant counsel was correctly denied because the Petitioner failed to demonstrate, one, she was prejudiced by her former counsel's alleged misconduct, ineffective assistant counsel, and based on the fact that she failed to demonstrate that she exercised due diligence in pursuing her claim. Additionally, the motion to open based on changed country conditions was correctly denied and the Board acted within its discretion because the Petitioner failed to overcome the prior adverse credibility determination and demonstrate prima facie eligibility for relief. Isn't that error under our case law? In other words, we've held on, you really can't rely on the prior adverse credibility determination on a motion to reopen, but you have to look at the independent new evidence. Well, I believe, Your Honor, the Board was relying on its recent decision. I'm not sure if there's any Ninth Circuit case law after the Board's published decision in matter of FSN, but generally speaking, when a Petitioner has an adverse credibility determination in their record and they're continuing that same claim, which is what the Petitioner here is doing, simply her previously discredited claim being that she feared the Mungiki and the past harm she alleged was based on that was deemed incredible and that determination, deemed supported by substantial evidence. So now when it comes to the motion to reopen, the Petitioner simply presented more evidence, more of the same in terms of the continuation of her fear of harm based on the Mungiki. I don't believe it's, my understanding of the court's law is that that credibility determination seemingly no longer exists, especially when the Petitioner seemingly attempting to continue that same discredited claim. And I think that's what the Board's decision was pointing at, the fact that that credibility analysis is still relevant in the validity of any future claim, especially one that is simply the same, essentially predicated on the same discredited facts. Well, her argument is that there are independent new items of evidence that were tendered in the motion to reopen that the Board disregarded because of the prior adverse credibility finding. Do you agree with that? Well, the Board disregarded that evidence based on the fact that it was, the unsworn letters based on the fact that she didn't seek to address that credibility and that those documents were simply more of the same that was previously deemed incredible. And that's, it was, the Board was, I think the language specifically, the Board indicated that the Petitioner, the evidence relating to the alleged new threats of harm from the Munkiti has not been shown to be independent of the evidence previously found to be not credible and does not represent a change in country conditions. That's page four of the record. But my difficulty with that, and maybe you can help me, is that she had her hearing in July of 2014. So this evidence post-dates that hearing by about three years. And so I'm having some understanding why, since it's not evidence from her, it's different evidence from different people about events that occurred three years after her hearing, which would affect her ability to return. How does that get infected by a credibility finding three years earlier? I think, Your Honor, it's because it's still the same claim is being raised. So the agency, she had her opportunity, she presented evidence before the agency in 2014, and the agency determined that she lacked credibility about her fear of harm on the hands of the Munkiti based on I understand that, but she couldn't, she couldn't have testified and nobody could have testified about what would have happened or what the lay of the land would be in 2017, could they? Well, no, of course not, Your Honor. But I think that the issue here is that the motion to reopen is not a mechanism to perfect and figure out, fix the issues in her past credibility. She can't just go back and say, okay, I guess I need more evidence than last time because they didn't believe me. So I'm going to present them more evidence. She has to address the fact that she, for example, omitted two instances of threats of violence against her by the Munkiti in 2007. The fact that there was questionable evidence, there were issues that with the evidence that she submitted, there were inconsistencies between her testimony and documentary evidence. All of that was related to the similar claim, the threat of harm by the Munkiti. And she has not addressed that yet to this, in her brief, in her motion to reopen, that wasn't addressed. And I don't believe it would be, I don't think it's this court's position or in the past that credibility determination goes, has no bearing on any future motion to reopen. I think it is a continuation of a previously discredited claim. If there are no further questions on that, Your Honor, turning to the ineffective instance of counsel claim, the government submits that the board's prejudice finding based on, was well within its discretion, based on the fact that the petitioner did not demonstrate that her past, her former counsel's conduct altered the outcome of her proceedings. She does not demonstrate that her former counsel's brief on appeal, for example, which she focuses on, failed to properly challenge the immigration judge's credibility finding. If you look at the brief on appeal by the former counsel, he does address the specific bases relied on by the immigration judge. And so I believe that based on her failure to demonstrate that the immigration judge's decision, for example, was clearly erroneous, she can't demonstrate that there was prejudice by her former counsel's conduct. And just to quickly address the equitable tolling determination, I agree with you, Your Honor, Judge McEwen, in that the beginning of the consideration here is at the very latest, as the agency noted, as the court noted when its earlier case was, she was notified of his suspension in April of 2017, two months after the suspension by this court. And any sort of claim that the petitioner was ignorant of any potential misconduct or deficient representation by her counsel is, the record does not support that because she herself raised concerns. She noted that her former counsel offered a reduced rate in handling her appeal because of deficiencies in his representation before the IJ. And the fact that he was also suspended during the original proceedings, that alerted her to genuine concerns about his conduct, and that the second suspension should have been what would have demonstrated her definitively learning the ineffective conduct assistance of counsel, excuse me, Your Honors. And so at that point is where the board is noting that there is no demonstration of diligence for the petitioner by the petitioner from February up until she filed her motion to reopen, sorry, excuse me, up until, I guess, when we have the date, which is July 2018, when the FOIA request was received. And that's the issue with the equitable tolling determination is that there was just a lack of evidence in general, and it was her motion was mainly general assertions about it and did not meet her burden of truth in showing that the untimeliness should have been excused. And if there are no further questions, Your Honor, we submit the rest of the time. Thank you, counsel. We'll hear rebuttal. Thank you, Your Honors. I would like to briefly discuss the other major abuse of discretion that the board committed in reviewing this motion to reopen, which is the fact that it completely failed to analyze relief under the Convention Against Torture. When it discussed the adverse credibility finding as tainting all of the evidence in the record, it specifically only referred to asylum and withholding of removal. As this court knows, protection under the Convention Against Torture is a completely separate form of relief with completely separate statutory requirements. And despite an adverse credibility finding, an individual may still be granted relief under the CAC based, for example, on country conditions alone. This court or the BIA at the agency must consider all evidence in the record. And in this case, they just completely did not review that particular form of relief. That alone is an abuse of discretion, Your Honor, and this case should be remanded for that reason. I would like to also touch briefly on prejudice. The main prejudice that we are alleging is that prior counsel's brief is almost akin to not having filed an appellate brief at all because it is devoid of any legal citation, any support beyond these statements that the immigration judge was wrong. And we all know that counsel's statements are not arguments, are not facts. This court has held that by not filing a brief or even not filing an appeal on time, that that is ineffective assistance and that a petitioner is entitled to a presumption of prejudice. That is the Ray case, Your Honors. And in this case, the evidence in the record shows plausible grounds for relief for protection under the Convention Against Torture. There's no dispute that Edith is Kenyan, that she's female, that she's uncircumcised, and no dispute based on the country conditions evidence that those women are targeted for forced circumcision and that that is torture. Also, the country conditions show acquiescence of a government official. And with that, I will end my argument. Thank you very much for your time. Thank you both for your arguments this morning. The case just argued will be submitted for decision and will be in recess.
judges: THOMAS, McKEOWN, Molloy